IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**DUSTIN HANKS,**

        Plaintiff,

vs.                                                                                              Civ. No. 10-388 RHS/ACT

**RESTAURANT CONCEPTS II, LLC,**
d/b/a Applebee's,

        Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (Doc. 66), which became ready for review on June 13, 2011.  After a thorough study of the Motion, Plaintiff's response (Doc. 71), Defendant's reply (Doc. 76), and all of the exhibits submitted for judicial review, the Court concludes that the motion is well-taken and should be granted.

## NATURE OF THE CASE

Defendant AmRest, captioned as Restaurant Concepts II, LLC, doing business as Applebee's, hired Plaintiff as a manager-in-training (MIT).  Plaintiff worked as a trainee in Clovis, New Mexico, from September to November 2007, in a nine-week training program. Plaintiff did not successfully complete the training program and separated from employment with Applebee's in November 2007.  Compl. ¶ 6, Answer 6.

After leaving employment with Applebee's in 2007, Plaintiff filed a charge of discrimination in 2008 against his former employer with the Equal Employment Opportunity Commission.  (Doc. 66-1 at 13).  Plaintiff then filed this pending lawsuit in March 2010.

Compl. Plaintiff alleges that Defendant AmRest discriminated against him on the basis of a physical handicap and/or serious medication condition, in violation of the New Mexico Human Rights Act (Count I). Compl. ¶¶ 9-15. Plaintiff also alleges that his former employer discriminated against him on the basis of a disability, in violation of the Americans with Disabilities Act (Count II). Compl. ¶¶ 16-24. The parties agree that the Court should apply the same standards to the state law claim as to the federal claim. Mot. at 23, Resp. at 29.

## UNDISPUTED MATERIAL FACTS

Defendant stated 28 facts which it contends are not in dispute and Defendant cited to evidence for each point, in compliance with D.N.M.LR-Civ 56.1(b). In response, Plaintiff did not follow the numbering system established in the motion and make clear whether Plaintiff admitted or disputed each of the 28 key facts.[1] Instead, Plaintiff stated 36 different facts,[2] as if he were filing his own motion for summary judgment, and noted that some of Plaintiff's facts are contrary to some of Defendant's facts. For example, in Plaintiff's Fact 15, Plaintiff appears to dispute Defendant's Facts 2, 3, 4, 5 and 6, but there is not any citation to evidence as required by Fed. R. Civ. P. 56(c)(1). Plaintiff did not address some of Defendant's assertions at all. According to the Federal Rules of Civil Procedure, "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . ." Fed. R. Civ. P. 56(e). The local rules also state that

---

[1] It is helpful to the Court and speeds review when the response brief parallels the assertions in the motion.

[2] Two paragraphs are numbered 18 and two paragraphs are numbered 24, so there are 36 numbered paragraphs even though the numbering ends at 34. D.N.M.LR-Civ. 56.1(b) states, "The response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." If a responding party wishes to assert their own facts, local rule requires that they be lettered. Rule 56.1(b).

"All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." D.N.M.LR-Civ. 56.1(b). Thus, the Court generally adopts the following facts as presented in the motion and undisputed in the response brief.

1. As a manager-in-training (MIT), Plaintiff was required to complete a structured MIT Program. (Carmosino Dec. ¶ 3; Pl. Dep. at 166:2-7).

2. In his Week 1 Progress Review, Plaintiff stated that management only needed to "tell [him] what they need or what [he] need[s] to do" to support his development and, further, did not identify any barriers that existed in his learning that the management team could help remove. (Pl. Dep. Ex. 11).

3. In his Week 3 Progress Review, Plaintiff stated that management only needed to "[h]old [him] accountable" to support his development and, further, did not identify any barriers that existed in his learning that the management team could help remove. (Pl. Dep. Ex. 12).

4. In his Week 4 Progress Review, Plaintiff stated that management was "doing everything that they can" to support his development and, further, did not identify any barriers that existed in his learning that the management team could help remove. (Pl. Dep. Ex. 14).

5. In his Week 5 Progress Review, Plaintiff stated that management was "doing all they can" to support his development and, further, did not identify any barriers that existed in his learning that the management team could help remove. (Pl. Dep. Ex. 15).

6. In his Week 8 Progress Review, Plaintiff stated that management only needed to "[t]ell me what they think would help [him] out" to support his development and, further, said that there were no barriers that existed in his learning that the management team could help remove. (Pl. Dep. Ex. 16).

7. Plaintiff's Charge of Discrimination does not allege that Defendant AmRest failed to

accommodate his disability. (Pl. Dep. Ex. 3).

8. In his EEOC Intake Questionnaire, Plaintiff stated that he neither asked for nor needed any assistance or change in working condition because of his disability. (Pl. Dep. Ex. 4). At his deposition, Plaintiff confirmed the accuracy of his responses to the EEOC Intake Questionnaire. (Pl. Dep. at 69:13-20).

In Plaintiff's Fact 18, Plaintiff asserts a fact that he says is contrary Defendant's Facts 7 and 8. Plaintiff points to a letter discussing communications between Plaintiff and Defendant prior to the separation. This information does not address the Charge of Discrimination or the EEOC Intake Questionnaire, let alone dispute Defendants Facts 7 and 8.

9. Plaintiff admits that there was nothing that his direct supervisor and training general manager, Mr. Barnes, did not do during training that Plaintiff felt that he should have done. (Pl. Dep. at 149:1-4).

10. Plaintiff admits that he does not recall any conversations with an AmRest manager about how his alleged dyslexia affects him. (Pl. Dep. at 201:4-202:5).

In Plaintiff's Fact 23, Plaintiff cites to a deposition of Plaintiff's immediate supervisor to show that the supervisor remembered a conversation with Plaintiff. However, this does not address, let alone dispute, what conversations Plaintiff recalled.

11. In the Week 3 Feedback Review, which was reviewed with Plaintiff, Mr. Barnes wrote that Plaintiff needed to start "correcting specs that are not being done right in the kitchen." (Pl. Dep. at 181:1-5, Ex. 12).

12. In the Week 3 Progress Report, an AmRest manager, Mr. Carmosino noted "work on spec" and "work on plate presentation" as areas for improvement. (Pl. Dep. Ex. 13).

13. In the Week 4 Feedback Review, which was reviewed with Plaintiff, "plate

presentation," "specs," and "portion sizes" were identified as areas where Plaintiff needed improvement. (Pl. Dep. at 188:23-25, Ex. 14).

14. In the Week 5 Feedback Review, which was reviewed with Plaintiff, "Plate presentation" was again identified as an area where improvement was needed. (Pl. Dep. at 191:22-192:3, Ex. 15).

15. In the Week 6 Progress Report, Mr. Carmosino noted that Plaintiff "need[ed] significant more practice" in the area of "Recipe & Plate Presentation Knowledge" and further stated that Plaintiff's "spec knowledge needs to improve." (Pl. Dep. Ex. 17).

16. In the Week 8 Feedback Review, which was reviewed with Plaintiff, Plaintiff's knowledge of "specs" was identified as an area needing improvement. (Pl. Dep. 193:20-25, Ex. 16).

17. Plaintiff failed the comprehensive Line Final Exam the first time he took it with a score in the 60s. (Barnes Dep. at 62:20-23).

18. Plaintiff agreed to an additional two weeks of training and a final opportunity to retake the comprehensive Line Final Exam, for which Plaintiff agreed he needed to pass this time with a score of 100%. (Pl. Dep. at 200:3-16; Carmosino Dep. at 33:19-22; Johnson Dep. at 21:14-22:3; Waller Dep. at 108:17-21).

19. The only MIT other than Plaintiff who Ms. Waller, an AmRest regional training manager, was aware failed the comprehensive Line Final Exam was given additional training and an opportunity to retake the exam, for which he needed a score of 100%. (Waller Dep. at 109:3-10; Woods Dec. ¶ 5). Ms. Waller is not aware of the other MIT having to retake the exam having a disability. (Waller Dep. at 109:3-10).

20. At no time prior to re-taking the exam did Plaintiff inform any AmRest manager that

he needed additional time to study, that he was not prepared to take the exam, or that he needed any accommodation before taking the exam. (Pl. Dep. at 200:3-18).

21. Plaintiff answered one or more questions incorrectly or incompletely on his re-take of the comprehensive Line Final Exam. (Waller Dec. ¶ 3; Waller Dep. at 114:14-21; Johnson Dep. at 25:10-16).

22. Ms. Waller routinely visited the stores in her Region in 2007 to observe the MITs, particularly when training issues arose. (Waller Dec. ¶ 2).

23. Ms. Waller has received feedback forms and written exams for every MIT in her Region during her time period as Regional Training Manager. (Waller Dep. at 7:17-25; Carmosino Dep. at 66:7-13; Waller Dec ¶ 2).

24. Mr. Carmosino was the decision maker as to whether Plaintiff would be allowed to continue in the MIT Program. (Carmosino Dep. at 35:7-17; Johnson Dep. at 10:18-11:1; Waller Dep. at 120:21-25).

25. Mr. Carmosino never informed Plaintiff of any decision with respect to Plaintiff's employment, nor did he tell Plaintiff that he needed to resign or be terminated. (Carmosino Dep. at 17:6-24).

In Plaintiff's Facts 28 and 32, he asserts facts which he says are contrary to Defendant's Facts 24 and 25.  However, the deposition testimony cited shows that Plaintiff's direct supervisor (Barnes) spoke with another manager (Carmosino) about terminating Plaintiff's employment, and the direct supervisor said who he thought made the decision to terminate.  This deposition testimony is not contrary to Defendant's facts.

26. According to Plaintiff, Mr. Barnes said that Plaintiff was going to be fired if he showed up to the restaurant but could not explain why (even when Plaintiff asked). (Pl. Dep. at

213:21-214:5). After taking a day to think about it, Plaintiff went to the restaurant the next day and resigned. (Barnes Dep. at 81:5-12; Pl. Dep. at 214:6-12, 216:13-17).

27. Plaintiff resigned his employment so that it would look better on his resume. (Pl. Dep. at 214:2-5; Barnes Dep. at 81:5-12).

In Plaintiff's Fact 30, Plaintiff offers information to dispute Defendant's Facts 26 and 27, but Plaintiff's information is generally consistent with Defendant's facts.

28. Plaintiff claims that he has dyslexia, which affects his ability to take written examinations in two ways: (a) he has difficulty memorizing written materials, and (b) he has difficulty comprehending the questions. (Pl. Dep. at 223:8-19).

## STANDARD OF REVIEW

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

# ANALYSIS

**1. Plaintiff May Not Covered By the Americans with Disabilities Act.**

Plaintiff alleged that he suffered discrimination in violation of the Americans with Disabilities Act (ADA). Compl. Count II. Before discussing the discrimination claim, it is worth noting that Plaintiff may not be an individual covered by the ADA. According to the Act,

> The term "disability" means, with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment

42 U.S.C. § 12102(1). Plaintiff contends that he is covered by the ADA because he has dyslexia, and dyslexia is an impairment that substantially limits reading. Reading is a major life activity as listed in the statute. § 12102(2). Specific learning disabilities are considered mental impairments according to 29 C.F.R. § 1630.2(h)(2), and dyslexia is generally regarded as a learning disability. However, there are several concerns with Plaintiff's contention.

First, it is not certain that Plaintiff has a mental impairment. Plaintiff asserts that he has dyslexia based on his own diagnosis, but he has not shown that a qualified evaluator diagnosed him with dyslexia.

Second, even if Plaintiff is impaired by dyslexia, it is unclear whether his impairment is severe enough to substantially limit the major life activity of reading. The severity of dyslexia varies by individual and at this point it is not known whether Plaintiff's impairment merely slows down his reading, makes reading difficult, or, as the law requires, "substantially limits" his reading. When asked how much harder reading is for him than the average person, Plaintiff responded, "I mean honestly, I really can't sit here and say how much harder, but I would say probably double. I mean, you know, whenever I read something, usually I have to scan through

it twice, if not more." Doc. 66-1 at 12; Pl. Dep. 251:15-18.  Needing to scan twice or more through reading material may not constitute a substantial limitation.

Third, even if Plaintiff has dyslexia that substantially limits reading, the link between reading ability and why Plaintiff separated from employment is fairly weak.  Plaintiff was repeatedly counseled about plate presentation and specs (Undisputed Materials Facts (UMF) 11, 12, 13, 14, 15), which presumably did not require reading because Plaintiff has not tried to explain his deficiencies in plate presentation by pointing to dyslexia.  After the employer counseled Plaintiff about plate presentation and specs, Plaintiff experienced difficulty in passing a written test covering similar material.  Given that Plaintiff also had trouble with the non-literary plate presentation, it is difficult to pinpoint whether he did not pass the written test due to a lack of knowledge or due to a reading disability.

These issues are noted because they are essential to Plaintiff's overall lawsuit for employment discrimination based on dyslexia.  However, these concerns are not the basis for granting summary judgment in favor of Defendant because Defendant's undisputed material facts do not include the facts that would be necessary for the Court to judge whether Plaintiff is covered by the ADA.  For the purposes of deciding whether summary judgment is appropriate on Plaintiff's discrimination claim, it will be assumed but not decided that Plaintiff is a qualified individual with a disability covered by the ADA, due to dyslexia that substantially limits reading.

**2. There Is Not A Genuine Issue of Material Fact Regarding Plaintiff's Claim That He Was Discriminated Against In Violation of The Americans with Disabilities Act, and Defendant Is Entitled to Judgment As A Matter of Law.**

    **A. Disparate Treatment**

Plaintiff contends that his employer discriminated against him by terminating his employment due to his disability.  Compl. ¶ 21, 22.  "'Discrimination' as used in the ADA encompasses three distinct types of discrimination. First, it means treating "a qualified individual with a disability" differently because of the disability, that is, disparate treatment." Davidson v. America Online, 337 F.3d 1179, 1188 (10th Cir. 2003).  The other two types of discrimination are failure to accommodate, discussed below, and disparate impact, which Plaintiff has not alleged. Id.

In order to satisfy the prima facie case for disparate treatment, Plaintiff must show:  (1) he is a disabled person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) his employer discriminated against him because of his disability.  MacKenzie v. City and County of Denver, 414 F.3d, 1266, 1274 (10th Cir. 2005).  For the purpose of granting summary judgment in favor of Defendant, the first two items are assumed to favor Plaintiff and the third item is analyzed here.

The first problem with Plaintiff's contention that his employer discriminated against him by terminating his employment is that the undisputed facts indicate that Plaintiff made the decision to resign.  Defendant's undisputed material facts 26 and 27 state that Plaintiff resigned, and Plaintiff's response brief does not create a genuine issue with regard to these key facts. Shortly before separating from employment, Plaintiff's direct supervisor informed Plaintiff that he had not passed his second attempt at the final exam required in his manager-in-training

program, and Plaintiff understood that he could be terminated as a result.  (Doc. 66-1 at 10, Pl. Dep. 213.)  Plaintiff responded, "Well, to be honest, I don't know if I'm going to go in there and get fired.  I just – I just may quit, because that way, it will look better on my resume."  (Doc. 66-1 at 10, Pl. Dep. at 214: 2-5.)   Two days after the exam, Plaintiff communicated with his direct supervisor again.  "Basically I just walked in the office, and basically I let him know that I was just going to go ahead and quit.  That way it will look better on my resume."  (Doc. 66-1 at 10, Pl. Dep. at 216: 15-18.)  Plaintiff refers to the day that he gathered his personal belongings and left as "the day that I resigned."  (Doc. 66-1 at 10, Pl. Dep. at 217: 16-18.)

Plaintiff concedes that constructive discharge did not occur, but argues in his response brief that the resignation was involuntary (Doc. 71 at 23) because Plaintiff resigned when he learned from his direct supervisor that other managers intended to terminate his employment after he failed the re-take exam.  (Pl. Dep. 213:9-16.)  According to <u>Lighton v. University of Utah</u>, 209 F.3d 1213, 1222, "a resignation is only considered involuntary if the working conditions are viewed as so intolerable, a reasonable person would feel compelled to resign" (internal quotations and citations omitted).  Plaintiff has not raised any issue of intolerable working conditions and therefore cannot argue that the resignation was involuntary due to working conditions.  Under a totality of the circumstances test, also used in <u>Lighton</u>, there are four factors to consider if a resignation is voluntary and each of these factors indicates that Plaintiff's resignation was indeed voluntary.  First, Plaintiff had an alternative to resignation in that he could have waited to see if his employer terminated him for failing his retake exam.  Two, Plaintiff understood the nature of his choice, as demonstrated by his calculation that resignation would look better on his resume.  Three, Plaintiff had a reasonable time in which to choose because he did not have any specific deadline to make a decision to resign, he made the

decision on his own time. Four, Plaintiff chose the effective date of his resignation rather than having anybody impose a final day on him. Id. In sum, the undisputed facts point to Plaintiff, not the employer, making the ultimate decision to end the employment relationship. Because Plaintiff made the decision to leave, Plaintiff cannot use the separation to satisfy the prima facie test's third prong regarding whether the employer discriminated against him because of his disability. The undisputed facts show that the employer did not take any adverse action against the Plaintiff, at least in part because Plaintiff resigned before the employer could speak to him about his exam failure.

Even if it was determined that the employer terminated Plaintiff, rather than Plaintiff making the decision to voluntarily resign, the second problem with Plaintiff's contention is that there is not a sufficient link between the reason for his separation from employment (he learned that he did not pass the exam) and his alleged disability (dyslexia). Throughout the training, Defendant counseled Plaintiff on plate presentation and specs. UMF 11, 12, 13, 14, 15. Plaintiff did not pass his first manager-in-training exam. UMF 17. Defendant gave Plaintiff another opportunity to pass the test. UMF 18. Plaintiff did not achieve the score the employer recognized as passing for a retake exam. UMF 18. There is evidence in the record that Plaintiff connected his exam failure with the need to separate from employment, but there is not any evidence to suggest that Plaintiff connected his exam failure to his alleged disability. Before taking the test, Plaintiff was nervous (Pl. Dep. 201:2-3) and did not feel that he could complete it satisfactorily. (Pl. Dep. 200:22-24.) Yet Plaintiff does not recall speaking with his direct supervisor before the test. (Pl. Dep. 201:4-7.) Apparently Plaintiff – even in his nervousness about not passing the retake test – did not raise the issue of a disability that could affect test taking.

In sum, the undisputed material facts indicate that Plaintiff has not shown that his employer discriminated again him by taking an adverse employment action and therefore he has not satisfied the prima facie case to show that he suffered disparate treatment. As a result, Defendant is entitled to summary judgment.

### B. Failure to Accommodate

Plaintiff's Complaint states, "Defendant refused plaintiff a reasonable accommodation." Compl. Count II, ¶ 20. Defendant also moves for summary judgment on the issue of whether Defendant failed to make a reasonable accommodation. Summary judgment is granted on the failure to accommodate issue for two reasons: Plaintiff did not request an accommodation and Plaintiff did not exhaust his administrative remedies with the EEOC.

First, an employee has the duty of informing the employer of the need for an accommodation:

> Employers are obligated to make reasonable accommodation only to the physical or mental limitations resulting from the disability of the individual with a disability that is known to the employer. Thus, an employer would not be expected to accommodate disabilities of which it is unaware. . . . In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.

29 C.F.R.§ 1630.9, appendix.

The Tenth Circuit reiterated this point in a recent case. "[B[efore an employer's duty to provide reasonable accommodations — or even to participate in the 'interactive process' — is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." EEOC v. C.R. England, --- F.3d ---, 2011 WL 1651372 (10th Cir. May 3, 2011).

The undisputed material facts indicate that Plaintiff did not ask his employer for any

accommodation. For the progress reviews during Plaintiff's first eight weeks of training, Plaintiff did not identify any barriers to learning the job. UMF 2, 3, 4, 5, and 6. Plaintiff did not discuss with Defendant's managers how his disability affects him (UMF 10) and Plaintiff noted that there was not anything that his direct supervisor should have done differently during Plaintiff's training (UMF 9). In Plaintiff's response brief, Plaintiff does not assert any facts that could be construed in his favor as a request for accommodation. Because Plaintiff did not take any steps to request an accommodation, Defendant cannot be considered to have refused or failed to provide an accommodation.

Second, summary judgment is granted in favor of Defendant on the failure to accommodate issue because Plaintiff did not exhaust his administrative remedies. "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." Jones. v. UPS, Inc., 502 F.3d, 1176, 1183 (10th Cir. 2007).

When Plaintiff completed an intake questionnaire with the EEOC, he was asked, "Did you ask your employer for any assistance or change in working condition because of your disability?" and "Did you need this assistance or change in working condition in order to do your job?" Plaintiff checked no to both questions. UMF 8; Pl. Dep. Ex. 4. At his deposition, Plaintiff confirmed the accuracy of those responses. UMF 8; Pl. Dep. 69:13-23. In Plaintiff's EEOC Charge of Discrimination, he did not mention Defendant's failure to accommodate any disability. (Pl. Dep. Ex. 3.)

The Jones plaintiff answered the failure to accommodate questions on his EEOC forms very similar to Plaintiff here.

> Mr. Jones checked "no" in response to the question: "Did you advise your employer that you needed an accommodation?" Moreover, the text of the charge does not contain facts that would prompt an investigation of Mr. Jones's claim that UPS failed to accommodate him. Indeed, facts related to the alleged act of

>discrimination – UPS's failure to consider accommodating his perceived disability – are absent from the charge. Because an investigation into whether UPS failed to accommodate Mr. Jones cannot "reasonably be expected to follow the charge," he has failed to exhaust his administrative remedies with respect to this claim.

Id. at 1187 (internal citations omitted). Because Plaintiff here completed the EEOC forms just like the Jones plaintiff, he has also failed to exhaust his administrative remedies.

Plaintiff argues that Defendant's responses to the EEOC (Doc. 71-11 and 71-12) "show that the failure to accommodate claim was central to EEOC's investigation . . . ." (Pl. Resp. at 15.) A failure to accommodate claim does not appear to be central to Plaintiff's response, and Plaintiff does not point to a page or sentence[3] among the eight pages that suggests that the failure to accommodate claim was a key issue in the EEOC's investigation. Therefore this Court is unable to agree with Plaintiff that there is any support in the record that Plaintiff exhausted his reasonable accommodation claim. Further, if Plaintiff failed to exhaust his administrative remedies, this Court may not even have subject matter jurisdiction to hear the claim. See Lara v. Unified School District 501, 350 Fed. Appx. 280, 2009 WL 3382612 (10th Cir. 2009) (affirming district court decision to dismiss ADA claim due to plaintiff's failure to exhaust administrative remedies).

In sum, there is not any role for a trier of fact regarding whether Defendant failed to provide Plaintiff a reasonable accommodation. The Tenth Circuit precedents applied to the undisputed facts requires summary judgment in Defendant's favor.

---

[3] In Plaintiff's response brief, Plaintiff has quoted material without citation to legal authority and referenced the record without directing the Court to a specific document and page. Plaintiff's counsel is encouraged to provide full citations so that in the future the Court may locate the information on which a party relies. According to local rule, "A motion, response or reply must cite authority in support of the legal positions advanced." D.N.M. LR-Civ. 7.3.

**4. The New Mexico Human Rights Act Claim Is Subject to the Same Conclusion as the ADA Claim.**

The parties are in agreement that Plaintiff's state law claim pursuant to the New Mexico Human Rights Act follows the same law as the ADA. Mot. at 23, Resp. at 25. Therefore, if Defendant is entitled to summary judgment on the ADA claims, Defendant is also entitled to summary judgment on the New Mexico Human Rights Act claim.

## CONCLUSION

The motion, response, reply and all exhibits submitted for judicial review have demonstrated that there is not any genuine dispute as to any material fact regarding whether Defendant discriminated against Plaintiff based on disparate treatment or failure to reasonably accommodate. As a result, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment (Doc. 66) is GRANTED and the case is dismissed.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE